# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00548-CV

**Michelle Kilpatrick-Lusk, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 205969-B, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Michelle Kilpatrick-Lusk appeals from the district court's judgment terminating her parental rights to her two children. Appellant's court-appointed counsel has filed a motion to withdraw accompanied by an *Anders* brief, asserting that, after a conscientious and professional evaluation of the record, he believes the appeal is frivolous because the record demonstrates no arguable grounds for reversal. *See Anders v. California*, 386 U.S. 738, 741-44 (1967); *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied). The State agrees that an *Anders* brief is appropriate. Intervenors at the trial court have also filed an appellate brief urging the court to affirm the trial court's judgment. Appellant has filed a response to the *Anders* brief. We affirm the trial court's judgment.[1]

---

[1] Counsel's pending motion to withdraw is granted.

The statutory grounds alleged for termination were that appellant (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; and (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the children. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E) (West Supp. 2006). The factual bases for the termination proceeding included appellant's participation in the death of the children's father and placement of the children with her mother, who had a history of abusive behavior. Our independent review of the record supports counsel's decision to file an *Anders* brief.

Robert Mozier and Michelle Kilpatrick met and married while in the Army, which is where they became acquainted with Donald Lusk. Mozier, the children's father, was reported "missing" in October 2000. One month later, appellant and the children moved in with Lusk and appellant divorced Mozier. She married Lusk in November 2001. Lusk and appellant were arrested for murdering Mozier in August 2004. Lusk admitted beating Mozier to death. Mozier's body was never found; Lusk claimed that he and appellant threw the body in a dumpster.

During the approximately four-year period between appellant beginning to reside with Lusk and the arrest, appellant frequently left the children in Lusk's care for up to thirty days at a time.[2] Appellant also left the children with Lusk's mother in California who then decided she could not keep the children and "gave" them to an aunt and uncle of Lusk's. That placement failed, and appellant asked her mother to come to Texas to care for the children. Appellant testified that her

---

[2] As a member of the Army, appellant was obligated to participate in various field exercises that required her to leave the children. She also served at least one tour of duty in Iraq.

mother abused her physically, emotionally, and mentally during her childhood and once, while intoxicated, tried to kill appellant. Appellant was in foster care numerous times, including the years from ages fourteen to eighteen. Appellant's mother had a long history of drug and alcohol abuse. Appellant admitted that despite this history, she did not ask intervenors, Mozier's parents, to care for the child but instead left them with her mother.

When arrested in August 2004, appellant told the children that she had done something bad and was going to jail. At trial, although she invoked her Fifth Amendment right against self-incrimination every time she was questioned about Mozier's disappearance and her possible involvement, she admitted that she was incarcerated because Lusk confessed that he killed someone.

There was evidence that termination was in the best interest of the children. They were in counseling, and their grades had improved to As and Bs. The Moziers had secured benefits that the children were entitled to receive because their father died on active duty. The Moziers, ages 49 and 50, desired to raise the children to adulthood as their grandchildren because adoption would result in the loss of some benefits. The caseworker testified that "all reports had been nothing but positive" while the children were in intervenors' care. The children's guardian ad litem testified that he thought further contact between appellant and the children would be harmful and recommended termination, as did the children's attorney ad litem.

Counsel reviewed the arguments against termination raised at trial. He notes that one argument raised at trial was that termination was premature because appellant had not yet been convicted of the underlying criminal charges. Appellant participated in the termination hearing by

3

telephone from North Carolina and, acting on the advice of counsel, "took the Fifth" with regard to any questions about the murder. In general, the exercise of the privilege against self-incrimination should not be penalized. However, in a civil case the fact-finder can draw a negative inference from the assertion of the privilege. *See In re C.J.F.*, 134 S.W.3d 343, 352-353 (Tex. App.—Amarillo 2003, pet. denied) (termination); *Texas Capital Secs., Inc. v. Sandefer*, 58 S.W.3d 760, 779 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Further, the basis for termination was not solely appellant's alleged involvement in Mozier's murder, but also appellant's acts in leaving the children with a caretaker who had a history of abuse and who actually abused one of the children and with the person who confessed to murdering the children's father.[3]

Counsel also notes the argument that the court should not have considered the abuse complaint made against appellant's mother as evidence against appellant in this termination proceeding because the children were returned to appellant after a hearing. At the time that the children were returned to appellant, however, she had not yet been arrested for her participation in Mozier's murder and it was still possible for her to participate in services designed to keep the family together. The return of the children at that time does not negate the relevance in the termination proceeding of appellant having left the children in dangerous surroundings. Finally, counsel argued that appellant's rights did not need to be terminated because the Moziers were not seeking adoption.

---

[3] Appellant's pro se brief informs us that, as a result of a plea bargain, she is on probation in North Carolina. Because no other charges are discussed, it is a reasonable inference that this sentence is for the charge as an accessory in the husband's murder.

An adoption placement is not a prerequisite to finding that a parent has committed one of the grounds for termination and that termination is the child's best interest.

In her pro se brief, appellant states that she is not asking for physical custody of her children and acknowledges that they are in a stable environment with their paternal grandparents. She details her efforts to complete various recovery programs. She states she is asking only "to be allowed to write and call my children to let them know I love them." This Court does not have the power to grant this request.

Our review of the record shows clear and convincing evidence in support of the trial court's decision to terminate appellant's parental rights and supports counsel's determination that there are no arguable grounds for reversal. Accordingly, we affirm the trial court's judgment.

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: November 16, 2006

5